Good morning, Your Honors. Alex Green on behalf of Appellate Louis Jenkins. I'd like to reserve two minutes for rebuttal. I want to focus my argument on Attorney Riggs's failure to do any investigation at all after Mr. Jenkins had told him that he had been at Napa State Hospital in the 70s. I think contrary to the finding that the State Court's finding that there was no evidence that Riggs, quote, knew or should have known, end quote, that Mr. Jenkins might be mentally ill, this information was a proverbial red flag that any attorney would have motivated any competent attorney to have done at least enough investigation to make an informed decision as to whether or not that fact might lead to potentially mitigating evidence for the sentencing hearing, especially given the severity or what was at stake here, 25-year-to-life sentence. The excuse given by Attorney Riggs for not investigating because Mr. Jenkins minimized the hospitalization must be rejected because no competent attorney allows his client to evaluate the materiality of evidence. That's why you have an attorney. So that's why you should be able to make an informed decision. ROBERTS Well, but his attorney, I think two separate attorneys, said there didn't seem to be a thing wrong with this guy. I mean, when we talked to him, he was clear. He gave us information. Everything seemed fine as far as we could tell. And he said he didn't have any problems in the past. That's what he said. Is he the guy also who also didn't have any family? Am I wrong? GENERAL VERRILLI Yes, that's correct, Your Honor. ROBERTS He also told him, there's no family to contact for me either. GENERAL VERRILLI Your Honor? ROBERTS We've done a lot of twisting and turning in death cases because, quote, death is special, close quote. But basically Strickland says an attorney in general can rely on what his client tells him. GENERAL VERRILLI Your Honor, not when his client is mentally ill. ROBERTS Well, if his client is mentally ill, but the point is the attorneys don't see him as mentally ill. GENERAL VERRILLI Well, that clue. ROBERTS That he says there's nothing wrong with me. GENERAL VERRILLI Your Honor, that's a symptom of the disease. ROBERTS Excuse me? GENERAL VERRILLI A symptom of the disease. GENERAL VERRILLI What is the symptom? ROBERTS Grandiose delusions. GENERAL VERRILLI Grandiose means you say I'm not mentally ill.  GENERAL VERRILLI Okay. ROBERTS Well, I say the same thing. Do I have a grandiose delusion? I suppose I might. GENERAL VERRILLI I don't answer that question. ROBERTS The records from Napa, the records from Napa show that Mr. Jenkins had no insight into a situation and he denies he is mentally ill. His delusion, which was chronic and ongoing, was that he was not mentally ill. In fact, that's why it was so important. I'm just focused on Mr. Riggs's incompetence and failing to do anything with that information. At least he should have probed, he should have contacted Napa. Those records would have shown him Mr. Riggs was taken in by, fooled by Mr. Jenkins' delusions. GENERAL VERRILLI I'm sorry. I'm not, what was the information that he had that should have tipped him off that this is a delusion? GENERAL VERRILLI He had been to Napa State Hospital in the 70s. Why else would someone be at the state mental institution other than that he was mentally ill? KAGAN When did this representation take place? GENERAL VERRILLI Mr. Riggs, or Tony Riggs in his declaration told him that, or stated that Mr. Jenkins told him this before the second sentencing hearing. KAGAN When was that? What year? GENERAL VERRILLI In the 1970s he was hospitalized. KAGAN I know that. GENERAL VERRILLI 2001. GENERAL VERRILLI And there are, and then the can't KAGAN The attorney was told in 2001 that he had been in Napa in the 70s. GENERAL VERRILLI That's correct, Your Honor. GENERAL VERRILLI And you couldn't, and it was no big deal, it was nothing to speak of, and he couldn't really remember what the reason was. GENERAL VERRILLI Well, like I said, Your Honor, you don't let it apply and evaluate the materiality of the evidence. GENERAL VERRILLI I understand that, but you know, you're talking, of course, you're a defense attorney, I take it, so you probably know a lot better than I do, but I take it folks have lots and lots and lots of clients and lots and lots and lots of cases, and they're talking to this guy, and he seems clear as a bell, he seems perfectly sound to them, he's perfectly sound, and he does make this comment, but he said, but it was nothing, it was like, it's nothing. And they're looking at this guy and talking to him, and it looks like nothing, because there's nothing wrong with this guy as far as they can tell. GENERAL VERRILLI I think, in fact, the arguments he makes in his new trial motion are a symptom of delusional thinking. They were frivolous, they were ridiculous in light of the evidence at trial. And Mr. Jenkins was stuck on that, that this is what, this is what, in fact, what happened. I think those thoughts were the product of delusional thinking. GENERAL VERRILLI You know, lawyers make a lot of frivolous arguments in the district court. I'm not saying all lawyers, and I'm not saying good lawyers, but lawyers sometimes make arguments that seem pretty frivolous in the district court, at least from the record it looks like. I'm not, I don't mean that to be personal at all. I'm just talking about a generality. Yeah, the guy made frivolous arguments, and by the way, pro se's make frivolous arguments all the time, because they're frivolous from our standpoint. They look frivolous to us. GENERAL VERRILLI Your Honor, if Attorney Riggs had gotten those records, instead of believing that Appellate was, quote, an intelligent and likable guy who had really wasted his life, unquote, he would have discovered that, in fact, Mr. Jenkins was mentally ill, had grandiose ideas of how smart he was, when, in fact, he was in the dull, normal range of intelligence. He was semi-literate, and he was sometimes not truthful. With that, with the information that he had been in Napa, any competent attorney would have done some investigation. GENERAL VERRILLI Counselor, if I accept that, I think the Court also said, well, even if he had done that investigation and put that into the mix, it wouldn't have made any difference. Do you want to?  GENERAL VERRILLI I disagree, because I think here the Court was unaware of the most potentially, of the most powerful mitigating evidence in the case. It was far more powerful because it gave an explanation, an answer to Mr. Jenkins' criminal record that there was a reason other than he was a simply incorrigible person who would not abide by the law. If the Court had known that he was paranoid schizophrenic, chronic paranoid schizophrenic, it would have shown that his conduct was not volitional. But instead of would not, he could not conform his behavior because of his disease to the law. Roberts The question was, should we strike the priors. Is that right? GENERAL VERRILLI The question is whether ROBERTS The question before the California Court was, should, in light of this should we strike his priors and not let him be sentenced under the three strikes law. Correct? GENERAL VERRILLI Well, not only because of the commitment, Your Honor, it was an ongoing mental illness. He was mentally ill. ROBERTS But am I right about my question? GENERAL VERRILLI Yes. Okay. And the evidence of the chronic mental illness would have allowed defense counsel to argue that he was less culpable and less deserving of punishment under the three strikes law than he would have been if he had a chronic disability. I think that would have been a significant handle for the trial court to strike at least one prior, in which case he could have given him 10 years. It would have shown that Mr. Jenkins was outside, at least partially, the scheme of the three strikes law, which is for the most serious recidivist offenders. Here we have a recidivist offender, but a mentally ill recidivist offender. And when the Court sentenced him, it was totally unaware that he had this illness. And that was a direct result of Mr. Riggs's incompetence. KAGAN What is the State law that indicates that the priors would have been stricken? GENERAL VERRILLI People v. Williams, Your Honor. Under People v. Williams, the Court has to consider the background character and prospects of the defendant to determine whether or not he or she is outside the three strikes scheme. I'd like to reserve some time for unless the Court has other questions. KAGAN No, I just the District Court issued a certificate of appealability on both these issues.  GENERAL VERRILLI It did. And I think both of its conclusions are objectively unreasonable. KAGAN Thank you. MR. GARRETT May it please the Court. Good morning, Your Honors. I have very little to add to the briefing or to the Court's questions in this case. I would only stress the one point that the issue here is what the California Court of Appeals decision irrational on both grounds as to whether there was incompetence of counsel and as to whether there was any prejudice from that purported incompetence of counsel. I think the Court's discussed the issues in fairly good detail. And if there were any questions, I'd be happy to answer them. But other than that, I have little to add and would be willing to submit. KAGAN Are there any questions? There don't appear to be any. MR. GARRETT Thank you, Your Honor. KAGAN Thank you. MR. GARRETT Well, Your Honor, I'll just reemphasize that I think this case hinges on Attorney Riggs's failure to do anything with what I think is a very important piece of evidence which would have led to the most powerful mitigating evidence. Without it, the sentencing court had an unclear, untrue, inaccurate picture of who Mr. Jenkins was. It didn't know what his background was. It didn't know what his prospects were. He was an untreated, mentally ill man. I think the Court would have treated his case differently had it known that. And I think Mr. Riggs, given that clue, despite Mr. Jenkins' denial, which I think was a result of his mental illness, that incompetence allowed that Court to have that misimpression. Thank you. MS. GOTTLIEB Thank you. The matter just argued is submitted for decision.
judges: Schroeder, Canby, Fernandez